# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DONALD KLINE, et al

      Plaintiffs,                    Case No. 4:21-cv-11272

v.

FISHMAN GROUP, P.C., et al.,         Honorable Nancy G. Edmunds

      Defendants.

_____

## MOTION TO DISMISS BY THE FISHMAN DEFENDANTS

      Defendants Marc Fishman, Ryan Fishman, and Fishman Group, P.C. (the "Fishman Defendants"), by and through counsel, Wade Fink Law, P.C., hereby move this Honorable Court to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P 12(b)(1) and (6). Plaintiffs do not concur in this motion.

      In support of this motion, the Fishman Defendants rely upon the law, facts, and arguments set forth in the attached brief, as well as the pleadings in the record.

Date: July 30, 2021               Respectfully submitted,

                              WADE FINK LAW, P.C.

                              /s/ Wade G. Fink (P78751)
                              550 W. Merrill St., Suite 100
                              Birmingham, MI 48009
                              (248) 712 – 1054
                              wade@wadefinklaw.com
                              *Attorneys for Fishman Defendants*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DONALD KLINE, et al

      Plaintiffs,                  Case No. 4:21-cv-11272

v.

FISHMAN GROUP, P.C., et al.,        Honorable Nancy G. Edmunds

      Defendants.
_____

**BRIEF IN SUPPORT OF MOTION**
**TO DISMISS BY THE FISHMAN DEFENDANTS**

## <u>STATEMENT OF ISSUES PRESENTED</u>

Should this Court dismiss Count II of Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) as to the Fishman Defendants because the Michigan Occupational Code exempts attorneys collecting a debt on behalf of a client?

The Fishman Defendants answer, yes.

Should this Court dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) because Plaintiffs' have failed to establish they have suffered an injury-in-fact required for Article III standing to sue?

The Fishman Defendants answer, yes.

Should this Court decline to exercised supplemental jurisdiction under 28 U.S.C. § 1367 if the Court dismisses the FDCPA claim and because there are novel and complex state claims that are not related to the FDCPA claim?

The Fishman Defendants answer, yes.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Newman v. Trott & Trott, P.C.*,
    889 F. Supp. 2d 948 (E.D. Mich. 2012)………………………………………5

*Spokeo, Inc. v Robins*,
    136 S. Ct. 1540 (2016)…………………………………………………..7,8

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (June 25, 2021)……………………………………..*passim*

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966)………………………………………...…14,15

28 U.S.C. § 1367(a)………………………………………………….*passim*

MCL 339.901(b)(xi)…………………………………………………..5

Fed. R. Civ. P. 8…………………………………………………4,10

Fed. R. Civ. P. 12……………………………………………..*passim*

# I.    RELEVANT FACTUAL BACKGROUND

Plaintiffs Donald Kline and Linda Kline, along with Plaintiff Irreona Byrd (collectively, "Plaintiffs"), filed this action against the Fishman Defendants, Defendant Alexandra Ichim, an attorney at Fishman Group, P.C. ("Ichim"), Fenton Oaks, LLC ("Fenton Oaks") and Professional Property Management Co. of Michigan ("PPM"). The Kline Plaintiffs assert that owed rent money to Fenton Oaks and alleged that the Fishman Defendants pursued this debt in Michigan state court. *See* ECF No. 1, PageID.8. The Klines purportedly owed Fenton Oaks $1,444.21. Plaintiff Byrd makes similar allegations but owing PPM a total of $2,275. *Id.* at PageID.9-11.

Plaintiffs allege, though, that the Fishman Defendants and Ichim never served or notified Plaintiffs of the underlying state lawsuits. Rather, according to Plaintiffs, the Fishman Defendants and Ichim filed false proofs of service in the state courts indicating that notice or service had been accomplished. *Id.* at PageID.11. Plaintiffs never appeared to defend the lawsuit and default judgments were entered against them. *Id.* at PageID.10-11.

The Kline Plaintiffs allege that money was garnished from them as a result of the default judgment being entered. The Kline Plaintiffs, however, do not allege how much money was allegedly garnished. *Id.* at PageID.10, ¶ 46. Upon information and

belief, Plaintiff Linda Kline acknowledged the legitimacy of the underlying debt after the judgment was entered wishing to resolve the matter. The Fishman Defendants had served garnishments on certain banks. In response to garnishments like these, banks typically withhold funds if indeed there are funds to withhold. The money is *not* immediately turned over to a creditor, rather, it is held by the bank.

For Plaintiff Linda Kline, the bank indicated that she had no bank accounts. It is therefore impossible that any funds were withheld from Plaintiff Linda Kline. **Exhibit A,** Garnishee Disclosure. For Plaintiff Donald Kline, no disclosure was made by any bank as to whether or not he had any bank accounts. The Fishman Defendants therefore never could have known if or how much money would have been withheld. Regardless, before this lawsuit was filed, the 67th District Court in Michigan released any funds theoretically withheld from Plaintiff Donald Kline.[1]

Plaintiff Byrd similarly alleges that she had money garnished as a result of the default judgment but makes no allegation as to what amount. *Id.* at PageID.11, ¶57. Upon information and belief, Plaintiff Byrd acknowledged the debt and wished to enter into a payment plan for the debt prior to ever being sued. Upon failing to make

---

[1]*See* Docket Entry May 5, 2021(16 days before this suit was filed) where Plaitniff Donald Kline had any funds released back to him. http://www.co.genesee.mi.us/roawebinq/ROACase.aspx?CRTNO=6706&PFIX=C &CASE=C20E0913%20%20&PTY=B01&FILENAME=C073021343; the Court may view this docket for verification of the proceeding facts, as well.

the very first payment on that agreement, a suit was filed against Plaintiff Byrd that resulted in a default judgment. A tax garnishment for $288.00 were the only funds withheld related to this judgment. However, prior to notice of this lawsuit,[2] all funds garnished from Plaintiff Byrd were returned. **Exhibit B,** Check to Plaintiff Byrd (redactions for privacy). Plaintiff Byrd therefore has not suffered a monetary injury.

Despite the lack of injury, Plaintiffs contend that the Fishman Defendants violated (Count 1) the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692 et. seq.); (Count 2) the Michigan Occupational Code ("MOC") (MCL 339.901 et. seq.); and, (Count 3) the Michigan Collection Practices Act ("MCPA") (MCL 445.251). Plaintiffs also allege that the Fishman Defendants are liable for (Count 4) Unjust Enrichment and (Count 5) Conversion.

Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for the following reasons: first, the Michigan Occupational Code, by its terms, does not apply to attorneys; second, none of the named Plaintiffs have Article III standing to sue because no plaintiff suffered an injury-in-fact; third, the remaining state law counts should be dismissed if the FDCPA claims are dismissed, or, should be severed from this action because they are novel, complex, and unrelated state

---

[2] Undersigned counsel was sent the complaint in this matter by counsel for Fenton Oak on June 8, 2021. Upon information and belief, the first time the Fishman Defendants' became aware of the matter was June 8, 2021 or June 9, 2021.

issues that are more appropriately brought in the Michigan state courts.

## II.    ARGUMENT

## A.    LEGAL STANDARD FOR THIS MOTION TO DISMISS

### 1.  Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) provides that an action must be dismissed where a court lacks subject-matter jurisdiction. Plaintiffs bear the burden of proving jurisdiction when challenged by such a motion. *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990) (citation omitted). More specifically, the question of standing to sue "goes to a court's subject matter jurisdiction." *Keply v. Lanz,* 715 F.3d 969, 972 (6th Cir. 2013). The burden remains on a plaintiff where defendant challenges her standing to bring suit. *Lewis v. Whirlpool Corp.,* 630 F.3d 484, 487 (6th Cir. 2011).

### 2.  Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ P. 12(b)(6), a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." In order to survive a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v Twombly,* 550 U.S. 544, 570 (2007).  Critically, "[i]n order to be viable under Fed. R. Civ. P. 8, a complaint's allegations must plausibly allow for a conclusion, through inference or

4

otherwise, that Plaintiff has stated a legal cause of action." *Ashcroft v Iqbal*, 556 U.S. 662 (2009).

**B.    COUNT II OF THE COMPLAINT, ALLEGING A VIOLATION OF THE MICHIGAN OCCUPATIONAL CODE, MUST BE DISMISSED BECAUSE THE FISHMAN DEFENDANTS ARE EXEMPT FROM LIABILITY.**

Plaintiffs are seemingly unaware that attorneys are exempt from liability under the MOC when collecting a debt on behalf of a client. Accordingly, Count II of Plaintiffs' Complaint, as to the Fishman Defendants, should be dismissed under Fed. Civ. P. 12(b)(6) for failing to state a claim.

To be liable under the MOC, a defendant must be a collection agency. Plaintiffs alleged that the Fishman Defendants are a collection agency under the MOC. *See* ECF No. 1, PageID.19, ¶92. However, by the MOC's very terms, a collection agency "does not include . . . (xi) an attorney handling claims and collections on behalf of clients and in the attorney's own name." MCL 339.901(b)(xi). Accordingly, attorneys and law firms engaged in collection activities on behalf of clients are not subject to the MOC. *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948 (E.D. Mich. 2012) (Judge Michaelson).

Accordingly, because the Fishman Defendants (and Ichim) were allegedly attempting to collect a debt on behalf of Defendants Fenton Oaks and PPM, they

cannot have violated the MOC. The conduct alleged, even if true, does not state a claim and must be dismissed under Fed. R. Civ. P. 12(b)(6).

## C.   THIS COURT DOES NOT HAVE SUBJECT-MATTER JURISDICTION BECAUSE PLAINTIFFS LACK ARTICLE III STANDING.

This Court should dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) because no Plaintiff in this case has suffered an injury and therefore does not have standing. Plaintiff Linda Kline never had a bank account garnished. Plaintiff Donald Kline has suffered no harm, as funds (if any) allegedly withheld were released by the 67th District Court and his bank on May 5, 2021. This was weeks before the instant lawsuit was brought.[3] And Plaintiff Byrd had funds returned to her prior to notice of this lawsuit. Therefore, because Plaintiffs have failed to demonstrate any injury-in-fact, they have no standing to sue in federal Court under the FDCPA. This Court does not have subject-matter jurisdiction to adjudicate these claims and the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Beyond alleging wrongful conduct, Plaintiffs must also have standing to sue under Article III of the U.S. Constitution's "case or controversy" clause. The Supreme Court has repeatedly held that to have standing a plaintiff must, at a

---

[3] The Fishman Defendants *did not challenge* Plaintiff Donald Kline's request for release from the garnishment. *See* fn. 1.

6

minimum, "have suffered. . . an invasion of a legally protected interest which is. . . concrete and particularized." *Lujan v Defenders of Wildlife¸* 504 U.S. 555, 560 (1992).[4]   By particularized, the injury "must affect plaintiff in a personal and individual way." *Spokeo, Inc. v Robins*, 136 S. Ct. 1540, 1548 (2016) (citing *Lujan* at 560 n. 1). Concreteness refers to an actual harm that must exist. *Id.* Even if a statute "grants a person a statutory right and purports to authorize that person to sue to vindicate that right," concreteness is still required despite the statutory language. *Id.* at 1549. With no "injury-in-fact" as a result of a legal violation, there is no standing to sue in this Court.

Specifically with regard to standing under the FDCPA, a plaintiff must have suffered an injury-in-fact from "abusive debt collection practices," as this is what "the FDCPA was designed to prevent." *Lyshe v Levy*, 854 F.3d 855, 859 (6th Cir. 2017).  For this reason, violations of the FDCPA that are "divorced from any concrete harm," do not give a plaintiff Article III standing. *Spokeo,* at 1549.

---

[4] The Michigan Supreme Court extended this injury-in-fact and particularized injury analysis when it applied *Lujan* and its progeny. *See Detroit Fire Fighters Ass'n v. Detroit,* 449 Mich 629 (Mich. 1995) (adopting *Lujan* as establishing the 'irreducible constitutional minimum' of standing). Accordingly, should the Court find no standing for the Proposed FDCPA Class, it should do the same for the Proposed State Law Class.

The Sixth Circuit directly applied *Spokeo* to FDCPA cases. *See Lyshe, supra.* In *Lyshe,* the Court held that a harm under the FDCPA must be a harm "the FDCPA was designed to prevent," involving misleading or fraudulent communication involving the rights of debtors. *Lyshe* at 859. Such harms can lead to many things, such as personal bankruptcies, marital instabilities, the loss of jobs, and the invasion of individual privacies. 15 U.S.C. § 1692(a). None of these were alleged here.

The Supreme Court had opportunity to again address standing last month in *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (June 25, 2021). The case is particularly illuminating because it expanded *Spokeo* in the context of a class action lawsuit brought under a similar federal statute to the FDCPA – the Fair Credit Reporting Act ("FCRA"). In *TransUnion,* the credit bureau giant began placing notices on credit reports stating whether consumers were on the Office of Foreign Assets Control's list of potential nefarious foreign actors. *Id.* at 12-13. But TransUnion's due diligence in determining whether consumers were actually on that list was lacking. This subpar diligence led to a certified class of over 8,000 people falsely being identified as potential bad actors when they actually were not. About one-third of this class had their credit reports with this information disseminated to third parties (creditors), while the other two-thirds did not have their credit reports

8

disseminated. *Id.* at 13-14. At trial, plaintiffs were awarded over $60 million in damages, costs, and fees.

The Supreme Court reversed as to the latter two-thirds of the class who did not have their information disseminated to third parties. In reversing, the Supreme Court held that merely being "exposed [] to a material risk [of harm]" is insufficient to have standing under Article III. *Id.* at 30-31. If there is an exposure to *potential* harm, "time will eventually reveal whether the risk materializes in the form of actual harm." *Id.*

For the majority, Justice Kavanaugh explained that this requirement for basic Article III standing recognizes the difference between a plaintiff's *statutory right to sue* and plaintiff having *suffered concrete harm. Id.* at 21 (emphasis added). In other words, "Congress may create causes of action . . .But under Article III, an injury in law is not an injury in fact [and only] those plaintiffs who have been concretely harmed [by defendant's conduct] may sue that private defendant over that violation in federal court." *Id.* Justice Kavanaugh explained that as "then-Judge Barrett succinctly summarized, 'Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.'" (citation omitted).

In short, *TransUnion* reiterated again that to have standing, a plaintiff must have been harmed by the wrongful conduct that forms the basis of their complaint. The Supreme Court used an analogy that a company harmed by pollution in Maine can sue that company, but a company in Hawaii cannot sue because they were not harmed by the conduct, even if wrongful, in Maine. *Id.* at 21-22. Indeed, "an uninjured plaintiff who sues [without suffering harm] is, by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's "compliance with regulatory law … (and, of course, to obtain some money via the statutory damages)." *Id.* at 22-23.

As a threshold matter common to all of the Plaintiffs in this case, there is an allegation in a single paragraph (out of a total of 116 paragraphs) alleging "emotional" and "general damages." This allegation does not meet general pleading standards. In order to state a claim under Fed. R. Civ. P. 12(b)(6), Plaintiffs must comply with the general pleading standards contained in Fed. R. Civ. P. 8. Plaintiffs are required to allege facts that, if accepted as true, are sufficient to rise above speculation or mere conclusions, but make the claims plausible. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). When a plaintiff "merely recites conclusory allegations," such are

10

"insufficient under *Twombley* and *Iqbal.*" *Hyman v. Lewis,* 2019 U.S. Dist. LEXIS 197445, *7 (E.D. Mich. 2019) (Judge Steeh).

Under the FDCPA, to obtain emotion damages, a "plaintiff must provide actual evidence of distress and injury, not merely conclusory statements." *See Hoffman v. GC Servs. LTD P'ship,* 2010 U.S. Dist. LEXIS 139509 (E.D. TN. 2010); for the same proposition, *see also Miller v. Prompt Recovery Servs.,* 2013 U.S. Dist. LEXIS 88203 (E.D. OH. 2013); *Tyree v. Ocwen Loan Servicing,* 2016 U.S. Dist. LEXIS 146568 (W.D. TN 2016). The conclusory allegation that all Plaintiffs suffered "emotional" and "general" damages is nothing but a conclusory statement devoid of any factual matter to make the allegation plausible. Accordingly, this category of damages is insufficient to support standing under Article III because the conclusory allegation gives no way to analyze whether such harm is concrete and particularized to the conduct here.

Further, as to each individual Plaintiffs, none have plead an injury-in-fact that supports standing.

The lack of injury is perhaps most clear with regard to Plaintiff Linda Kline. A garnishee-bank, on a disclosure form filed in the 67th District Court, indicated that it "does not possess or control [Linda Kline's] property, money, etc." because there was "no [bank] account." *See* **Ex. A.** In other words, there was nothing for the bank

11

to withhold. The Court will notice upon reviewing the Register of Actions of the case identified by Plaintiff Linda Kline as the matter that led to this action (*see* fn. 1) that no other garnishments were filed. This being the only garnishment filed, it is impossible that any money was "withheld" from Linda Kline because she had nothing to withhold.

Next, Plaintiff Donald Kline alleged that money was withheld from him in the case identified in the 67th District Court. As is clear from the Register of Actions in that case (*see* fn. 1), on May 5, 2021, Plaintiff Donald Kline made an objection to any garnishment filed in the case. The Fishman Defendants, nor Fenton Oaks, contested the objection as "no one appeared for [plaintiff]." *See* fn. 1. As a result, the Court closed the garnishment and "release[d] liability," meaning that funds, *if any*, were released. At a bare minimum, the judicial record is clear that prior to the filing of this lawsuit, Plaintiff Donald Kline had no injury.

Regardless, though, the burden was, and is, on Plaintiff Donald and Linda Kline to allege he *was* harmed. And they simply do not. If either of the Klines knew funds were withheld, they would know, with precision, how much. Yet, they do not allege with any definiteness how much money he allegedly had withheld. This is precisely what *TransUnion* and related Supreme Court cases are designed to prevent – the generalized, figure-it-out-as-we-go pleading of injury. That is insufficient. The

12

fact is, Plaintiff Donald Kline and Plaintiff Linda Kline are both whole and neither have alleged a concrete, particularized injury-in-fact.

Lastly, the same is true for Plaintiff Irreona Byrd. Her allegations, as far as pleading standards go, suffer from the same defects as the Klines. Regardless, Ms. Byrd has had funds returned to her. *See* **Ex. B.** This was done before the Fishman Defendants were ever on notice of this suit.

More broadly, those who did not suffer a monetary loss cannot be said to have suffered anything but a theoretical "risk of future harm" that has not materialized. *TransUnion* at 35-37. Nothing in Plaintiffs' Complaint "present[s] evidence that [Plaintiffs] were independently harmed by exposure to the risk itself." *Id.* Even if the conduct alleged was established, the mere fact that the Fishman Defendants "could have" collected funds improperly does not mean a Court should "simply presume a material risk of concrete harm." *Id.* In fact, it appears Plaintiffs did not even know that there were false proofs of service filed against them, let alone if they were injured. *Id.*

It is Plaintiffs burden to establish they have standing. The barebones allegations in their complaint, with allegations such as "general damages," are insufficient to confer standing. Accordingly, because there are no harms alleged by Plaintiffs that are concrete, particularized, and meet the plausibility standard, none

of the Plaintiffs here have standing to sue under the FDCPA. This case should be dismissed under Fed. R. Civ. P. 12(b)(1).

**D.   THIS COURT DOES NOT HAVE SUBJECT-MATTER JURISDICTION TO ADJUDICATE THE STATE LAW CLAIMS.**

There are two primary reasons why this Court should decline jurisdiction over Plaintiffs' state law claims: first, if the Court dismisses Plaintiffs' FDCPA claims based on standing, then this Court would be without original jurisdiction and should decline to exercise supplemental jurisdiction; second, even if the Court does not dismiss the FDCPA claims, the novel and complex nature of the state law claims should result in this Court declining to exercise supplemental jurisdiction over the state law claims. Once challenged with a motion under Fed. R. Civ. P. 12(b)(1) like here, Plaintiffs have the burden of demonstrating that supplemental jurisdiction is appropriate. *See, e.g., Peacock v. Thomas,* 516 U.S. 349, 350 (1996). They cannot meet that burden.

Generally, federal district courts have "supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). To define supplemental jurisdiction, Congress adopted the test articulated in the landmark Supreme Court case, of *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). In *Gibbs*, the Supreme Court permitted

14

supplemental jurisdiction where the state law claims stemmed from a "common nucleus of operative facts" which comprised "but one constitutional 'case.'" *Id.* at 725-26. And so long as the court had original jurisdiction over at least one claim, supplemental jurisdiction was appropriate. *Id.* However, supplemental jurisdiction has always been "a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over the state claims . . . ." *Id.* at 726. *Gibbs* was clear that supplemental jurisdiction may be denied "if the federal claims are dismissed before trial," if "it appears that the state issues substantially predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims. *Id.* at 726-27.

28 U.S.C. § 1367(c), codifying *Gibbs,* provides that a court retains discretion to decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

First, as the statute itself provides, a court should decline supplemental jurisdiction where the action that gave the court original jurisdiction has been

dismissed. 28 U.S.C. § 1367(c)(3); *see also Harvey v. Great Seneca Financial Corp.,* 453 F.3d 342 (6th Cir. 2006). Here, should the Court agree that the FDCPA claims should be dismissed based on a lack of standing for one, two, or all Plaintiffs, then the state law claims, too, should be dismissed for want of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Second, even if this Court does not dismiss the FDCPA counts, the Court should nonetheless decline to exercise supplemental jurisdiction over the remaining state law counts under the MCPA and common law (unjust enrichment and conversion).[5] *See* 28 U.S.C. § 1367(c)(1); *see also Peters v. Cars To Go, Inc.,* 184 F.R.D. 270 (W.D. Mich. 1998).

Undersigned counsel has not found a single case under Michigan state law that has applied the MCPA to a set of facts remotely similar to this case. The reason for this is likely because the MCPA contains an exhaustive list of prohibited acts. *See* MCL 445.252. This list evinces a clear intent by the legislature to address communications between debt agencies and debtors, as each prohibited act is designed to protect debtors from misleading or otherwise improper methods of collecting a debt. Each prohibited act has one thing in common: each relate to communications between debtor and collector. In this case, the alleged wrongful

---

[5] Assuming the MOC count is dismissed, but if not, the MOC count, as well.

16

conduct under the MCPA involves alleged fraud on the Court. The MCPA does not seem to have ever been used to sue a party for representations made to a Court.

It certainly may be the case that several of the prohibited acts apply to the facts here. But that should be decided by Michigan courts as a novel and complex question. Plaintiffs here assert they have a putative class of people harmed by the alleged conduct. Certainly, in a case of first impression, applying the MCPA in a way it has never been applied before, where there is no communication directly with a debtor, this Court should consider allowing the sovereign State of Michigan, for which interpretation of this law matters most, to decide the legal issues involved.

With regard to the conversion count, the facts required to prove such count differs substantially from the proofs required for an FDCPA claim. Statutory conversion under Michigan law requires a showing that a defendant wrongfully converted property of another to his own use. MCL 600.2919a. To prove the claim, Plaintiffs will need to show that the Fishman Defendants, or any co-Defendant, took possession of funds belonging to Plaintiff for their own use. That is not at all what needs to be proven in an FDCPA claim. In an FDCPA claim, if this Court were to find standing, Plaintiffs have no obligation to demonstrate monetary damages or that the Fishman Defendants ever possessed any funds. Rather, the question is whether there was unfair or deceptive debt collection methods. Statutory conversion is a very

specific Michigan statute that is fact-specific and different from the FDCPA claims. The facts and proofs being so different render this count not "so related to claims in the action within such original jurisdiction…" 28 U.S.C. § 1367(a).

For similar reasons, the unjust enrichment count differs substantially from the FDCPA claim. Under Michigan law, to maintain a claim for unjust enrichment in Michigan, the following elements must be proven: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by defendant. *Barber v. SMH (US), Inc*., 202 Mich. App. 366, 509 N.W.2d 791, 797 (1993) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652 (1991)). Essentially, "the plaintiff must plead that the defendant received a benefit from the plaintiff and that inequity resulted to the plaintiff as consequence of the defendant's retention of that benefit." *PNC Bank, Nat. Ass'n v. Goyette Mechanical Co*., *Inc*., 88 F. Supp. 3d 775 (E.D. Mich. 2015); *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824 (E.D. Mich. 2014). That is not at all what needs to be proven in an FDCPA claim. In an FDCPA claim, if this Court were to find standing, Plaintiffs have no obligation to demonstrate monetary damages or that the Fishman Defendants ever possessed any funds. The facts and proofs being so different render this count not "so related to claims in the action within such original jurisdiction…" 28 U.S.C. § 1367(a).

18

In short, the FDCPA was designed to prevent misleading or fraudulent communication and conduct involving the rights of debtors. That is what this Court will adjudicate if this case continues. But the state law claims are fundamentally different and the Court should decline to exercise supplemental jurisdiction in this case. At an absolute minimum, it is not the Fishman Defendants burden to demonstrate supplemental jurisdiction is proper, it is Plaintiffs'' burden. And their complaint, in its one conclusory statement about supplemental jurisdiction (ECF No. 1, PageID.4, ¶ 14), does not meet this burden.

### III.   CONCLUSION

For the foregoing reasons, Defendants request that this Court grant their motion in its entirety.


                                        Respectfully submitted,

Date: July 30, 2021                     WADE FINK LAW, P.C.

                                        /s/ Wade G. Fink (P78751)
                                        WADE FINK LAW PC
                                        370 E. Maple Rd., Third Floor
                                        Birmingham, MI 48009
                                        (248) 712 – 1054
                                        wade@wadefinklaw.com
                                        *Attorneys for Defendant*

## **PROOF OF SERVICE**

Undersigned counsel certifies that on July 30, 2021, the foregoing was filed using the Court's e-filing system, which will send notice and a copy of same to all parties of record.

/s/ Wade G. Fink